CREW'S DIE CASTING CORPORATION *v.* DAVIDOW.

1. EASEMENTS—GRANT—ABANDONMENT—EXTINGUISHMENT.

An easement of use of an alley adjacent to the dominant tene-
ment that is created by an accepted grant became a right
appurtenant to the dominant estate and, as such, is not subject
to abandonment by act or omission of the dominant tenant
or his successors, although it might be extinguished by an
estoppel amounting to fraud on the servient owner or adverse
possession by the latter for the statutory period.

2. SAME—INCREASE OF BURDEN ON SERVIENT ESTATE.

The use of an easement must be confined strictly to the purposes
for which it was granted or reserved as the owner of the
easement cannot materially increase the burden of it upon
the servient estate or impose thereon a new and additional
burden.

3. SAME—REMAND—SCOPE OF USE—EVIDENCE.

Decree holding that easement in alley which had been created by
a grant had been abandoned is reversed with right on remand
to receive further testimony dealing with the specifically per-
missible details of plaintiff's legally rightful use of the alley,
and not permitting plaintiff to park trucks therein nor use it
for ingress or egress directly or indirectly between street and
other property than that alongside the alley and for which
the easement had been granted.

4. COSTS—REMAND—EASEMENTS—SCOPE OF USE—EVIDENCE.

No costs are allowed plaintiff appellant on reversal of decree
declaring an easement had been extinguished by abandonment,

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 17A Am Jur, Easements §§ 99, 170–173.
   Commencement and duration of express easement as affected by
      provision in instrument creating it.   154 ALR 5.
[2] 17A Am Jur, Easements § 115.
[3] 17A Am Jur, Easements §§ 170–173.
[4] 14 Am Jur, Costs § 93.

where remand is ordered with permission to take evidence so as to limit plaintiff's use of easement to purposes for which it had been granted.

Appeal from Wayne; Weideman (Carl M.), J. Submitted February 6, 1963. (Calendar No. 51, Docket No. 49,717.) Decided March 8, 1963.

Bill by Crew's Die Casting Corporation, a Michigan corporation, against Laura Davidow to enjoin interference with use of private alley. Bill dismissed. Plaintiff appeals. Reversed and remanded.

*Louis Rosenzweig*, for plaintiff.

*Davidow & Davidow*, for defendant.

BLACK, J. This case descends directly from *Zemon* v. *Netzorg*, 247 Mich 563, decided in 1929. The same "alley" is involved. The only difference between the 2 cases is that the present plaintiff, owner of lot 1 plus the north 69 feet of lot 2*, seeks by its bill to establish certain rights in and to the alley as appurtenant to the north 69 feet of lot 2; whereas in *Zemon* plaintiff's predecessor unsuccessfully sought the right of ingress and egress, between Meldrum avenue and adjoining lot 1, by means of the same alley.

Paragraph 4 of plaintiff's bill, not traversed by defendant, discloses the intentional means by which the alley came into being as a right in land. The allegation:

"On June 13, 1892, William I. Bolt and Mildred A. Bolt, his wife, by warranty deed, conveyed to William Shupe property owned by the plaintiff and in said

---

* For descriptive detail see the *Zemon Case* at 564. The north 69 feet of lot 2 is bounded on the south by the north line of the alley. The alley extends over the north 16 feet (approximately) of the remainder of lot 2.

deed specifically conveyed an easement described as follows:

" 'Also the right of access and egress to and through the private alley as now fenced and used on said lot 2 situated south of and adjoining the premises above conveyed and extending from the east line of Meldrum avenue to the west [sic] line of lot 2, a distance of 60 feet and 2 inches more or less, said private alley or right-of-way being 16 feet and 10 inches more or less in width, as now fenced and used.' "

Following due hearing the circuit court ruled that "the use of the so-called alley has been abandoned, and that there is no right to use this alley as ingress and egress from Meldrum avenue to lot 1." A decree dismissing plaintiff's bill thereupon entered. Plaintiff appeals.

By the allegation quoted above and the findings in *Zemon* the alley became a right appurtenant to the north 69 feet of lot 2. As such it was and is not subject to abandonment by act or omission of the dominant tenant or his successors. Something more than that, such as an estoppel amounting to fraud on the servient owner or adverse possession by the latter for the statutory period, was and is required to extinguish such appurtenant right. Michigan's leading case to the point (followed in *Hasselbring* v. *Koepke,* 263 Mich 466, 483 [93 ALR 1170]; *Mc-Morran Milling Co.* v. *Pere Marquette R. Co.,* 210 Mich 381, 393; *Murphy Chair Co.* v. *American Radiator Co.,* 172 Mich 14, 29) is *Day* v. *Walden,* 46 Mich 575. There it was said (p 583):

"The right to the easement was not lost by the mere neglect to assert, use and enjoy it for the period of 20 years. There is no doubt of this upon the authorities. The easement was created by grant as an appurtenance to the mill; and there were no conditions or limitations attached which rendered its

use necessary to its continuance. The grant was perpetual, and without conditions; and therefore the privilege granted would continue indefinitely whether the grantee did or did not avail himself of it. An accepted grant cannot be waived or abandoned; and the neglect of the grantee to enjoy the easement would be no more significant in its bearing upon his rights than the neglect to enjoy the freehold to which the easement was appurtenant. (Citing cases.)"

It is not shown that any act of plaintiff or its predecessors has legally extinguished the dominant right created in 1892, and so the decree below must be reversed.* There remains, however, the question whether such conveyed appurtenance included, for grantee Shupe and plaintiff in turn, any of the special rights plaintiff would have adjudicated. Mr. Crew, "President and owner" of the plaintiff corporation, testified as follows:

"*Q.* Did you buy this Zemon property in order to establish the right to go through the alley?

"*A.* No, no. They were 2 separate transactions entirely.

"*Q.* Whether the fact that lot 2, this property immediately north of the alley, created no need for the use of that alley,—did it?

"*A.* Only for putting the trucks in there, so they don't park on the street. That was our—

"*Q.* Only for parking purposes?

"*A.* To go through and go up to the end of the property.

"*Q.* You would get nowhere?

"*A.* No.

"*Q.* You only wanted to use it for parking purposes?

---

* It was shown that plaintiff's predecessor, some 4 to 6 years ago, added to the building on the north 69 feet of lot 2 so that the south wall thereof extended completely along the north line of the alley; thus "walling off" the alley from the freehold. Such was the proof of "abandonment" on which defendant relies.

"*A.* That is right.

"*Q.* And then you, having acquired lot 1, wanted to use this private alley to get into the back of that lot, didn't you?   Lot 1?

"*A.* That is so.

"*Q.* That is the purpose of the lawsuit, isn't it?

"*A.* No.   The purpose of the lawsuit is to determine the exact right of the use of the alley in itself. We may want to put—we are expecting to put a door in that building on that alley, at the rear end of the property.

"*Q.* You expect to put a door in there?

"*A.* That is right.

"*Q.* When did you first develop that expectation?

"*A.* Oh, that has been right along.   There has been no definite date on it."

Mr. Crew elaborated:

"*Q.* Is there any method, or any use to which you can put the alley at the present time, if you had the right to use the alley?   *   *   *

"*A.* We would have put a door in there, in our building; that would be the first thing.

"*The Court:* How wide a door would you put in?

"*A.* For unloading material.

"*The Court:* How wide would that be?

"*A.* Ten feet, a minimum.

"*The Court:* How long are the trucks that would use that?

"*A.* Oh, there is various trucks to unload the back end.   Not into the building.   They back into the back of the alley to unload it, so we don't have to move the material all the way around from the front.

"*The Court:* So you wouldn't contemplate backing a truck from the alley in?

"*A.* No.

"*The Court:* That would take a pretty wide door in a 16-foot alley?

"*A.* That is right.

"*The Court:* Forty foot truck in a 16-foot alley, you couldn't make it handily?

"*A.* No. We intend to have the trailers back in. Our stuff comes in in trailers. Unload it from the back and taken in the side of the door of the building. That was our only purpose."

Mr. Crew would squeeze, from the grant of 1892 and at expense of the servient-taxpayer, more indeed than is the right of his corporation. The latter enjoys ingress and egress between the street and the north 69 feet of lot 2 "as now used" (referring of course to the intention of the 1890's) ; no more and no less. The quoted intention of that time provided no privilege of parking vehicles in the alley, especially long and heavy drays or trucks,* and it suggests no right of use of the alley for commercial purposes such as the loading and unloading of such commercial vehicles. In short, the granted right seems—by the wording of the "various conveyances" mentioned in *Zemon*—to have been intended as one of passage only, in and out to the street to and from the adjacent freehold, to be exercised as contemplated by the original parties grantor and grantee when they dealt (see, *e.g., Rumrell* v. *Mingus,* 350 Mich 571 at 575). The exact extent of the right is, to be sure, a question of fact (*Unverzagt* v. *Miller,* 306 Mich 260, 266), but such right is always circumscribed by the rule (*Delaney* v. *Pond,* 350 Mich 685, 687) that:

"The use of an easement must be confined strictly to the purposes for which it was granted or reserved. A principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden."

* See, generally, annotation headed "Right to park vehicles on private way" (37 ALR2d 944).

Reversed and remanded for entry of decree in accord herewith. On remand, and if desired by either party, the court may receive further testimony within the scope hereof, dealing with the specifically permissible details of plaintiff's legally rightful use of the alley, and thereupon will enter such new decree as may be indicated by such testimony and the foregoing opinion of this Court. In accord with *Zemon* the decree will definitely ban ingress and egress by plaintiff, directly and indirectly, between lot 1 and Meldrum avenue via the alley. No costs.

CARR, C. J., and DETHMERS, KELLY, KAVANAGH, SOURIS, OTIS M. SMITH, and O'HARA, JJ., concurred.