**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 13, 2005**

BLACKHAWK DEVELOPMENT CORPORATION
and DEXTER CROSSING, L.L.C.,

Plaintiffs-Appellants,

v                                                           No. 126036

VILLAGE OF DEXTER and DEXTER DEVELOPMENT,

Defendants-Appellees.

_____

**BEFORE THE ENTIRE BENCH**

**CAVANAGH, J.**

Plaintiffs sought leave to appeal from the Court of Appeals decision affirming the trial court's grant of summary disposition to defendants village of Dexter and Dexter Development. Rather than grant leave to appeal, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings.

## I. INTRODUCTION

This case requires us to examine the scope of an easement granted by a private party to a public entity. Specifically, we must determine whether allowing a private

property owner to construct access roads and related amenities on property subject to an easement that was granted to a municipality for the express purpose of relocating and improving a public road is within the scope of that easement. Because there is no evidence in the record that the proposed developments fall within the scope of the express easement, we hold that the trial court erred by holding otherwise. Thus, we reverse the decision of the Court of Appeals and remand this case for further proceedings.

## II. BACKGROUND

In 1990, defendant village of Dexter ordered approximately one acre of a portion of land owned by the Kingsley Trust, which was administered by John Kingsley, condemned. The village intended to use the land to improve Dan Hoey Road, which was, at the time, a gravel road that intersected with Dexter-Ann Arbor Road in an unsafe manner. The village planned to pave and widen Dan Hoey Road, as well as move it slightly south.

In lieu of condemning the land, the village and the Kingsley Trust entered into a settlement agreement through which the trust granted the village an easement to a portion of approximately one acre in size. The settlement agreement stated that the trust would transfer "an easement

2

for public roadway purposes . . . ."  The easement grant read that the trust granted "an easement for the purposes of relocating, establishing, opening and improving Dan Hoey Road . . . ."

The village relocated Dan Hoey Road and completed its project, but the project did not consume the entire area subject to the easement.  Eventually, the trust sold the burdened parcel to plaintiff Blackhawk Development Corporation, which then developed a commercial complex, plaintiff Dexter Crossing, L.L.C., on a portion of the property.[1]  The portion subject to the easement was not developed.

Thereafter, John Kingsley, through his corporation, defendant Dexter Development, purchased additional land that adjoined the old Dan Hoey Road but was separated from the new Dan Hoey Road by land subject to the easement.  Kingsley then submitted a proposal for developing his land to the village.  However, Kingsley's plan included using portions that were subject to the village's easement for the purpose of constructing access drives, building a pond, and making other developments on that parcel.

---

[1] For convenience, the singular "plaintiff" will refer to Blackhawk Development Corporation.

The village informed Kingsley that he would have to buy the affected land before it would approve the development, but plaintiff rejected Kingsley's purchase offers. Consequently, Kingsley's attorney advised Kingsley to revise his proposal by removing from the plans affecting plaintiff's parcel anything that could be construed as a "private" development, but leaving developments such as utilities, sidewalks, and access roads. Kingsley resubmitted his revised plan and proposed to "dedicate" the developments on the affected parcel to the village for public use. In other words, Kingsley proposed to create purportedly "public" developments on plaintiff's land, which the village could then justify by way of its easement.

The village authorized the proposal, giving Kingsley permission to construct developments on the subject property, including two access roads, light poles, trees, landscaping, pond grading, sidewalks, pipes, conduit, sewer lines, and water lines. The access roads would use the land subject to the easement to transect plaintiff's property and connect Kingsley's property to the new Dan Hoey Road. As part of their agreement, Kingsley indemnified the village against legal action.

4

Neither the village nor Kingsley informed plaintiff of their arrangement, leaving plaintiff to discover it when construction began. After plaintiff's objections to the village and to Kingsley proved unsuccessful, plaintiff sued for injunctive relief, declaratory judgment, and trespass.

Among the facts that emerged during discovery were the following. In a memorandum addressing the matter, village zoning officer Janet Keller wrote that because Kingsley's land was "landlocked," the village might be "in jeopardy" if it did not approve the access road. Kingsley, however, acknowledged that his land was not landlocked because of two ingress and egress points at Dexter-Ann Arbor Road. Further, Kingsley testified that he could have built his commercial development without using the land covered by the easement, but that he never submitted plans that did not include land covered by the easement. He also testified that the access drives served no other purpose than access to the commercial development and that he only built the west driveway because he believed the village required it.

Zoning officer Keller testified that the village did not request either road, but after reviewing where Kingsley proposed to place the roads, the village asked Kingsley to align the center road with an opposing road to form a four-

5

way intersection. Keller stated that the village was never presented with a plan that did not include the roads and that she did not know why the development could not proceed without them. Keller testified that the access roads were not an "improvement" to Dan Hoey Road. However, both she and other village officials agreed that the access roads contributed to the safety of the area and that Kingsley's development as a whole contributed to the general public good.

Evidence from the village planner showed that the access roads did not meet public road standards and that the entrances were designed to meet commercial standards. Moreover, the village attorney testified that when Dan Hoey Road was realigned in 1990, all four of the purposes stated in the easement grant, "relocating, establishing, opening, and improving Dan Hoey Road," were fulfilled. According to the testimony, village officials had no intention to further utilize the easement in the foreseeable future.

Defendants moved for summary disposition under MCR 2.116(C)(10),[2] arguing that the proposed developments were within the scope of the village's easement because the

_____

[2] Defendant Dexter Development filed the initial motion and supporting brief, and defendant village of Dexter filed a concurring statement.

6

access roads promoted public safety and welfare. Defendants also argued that the utilities were permissible because the permissible uses of a public road easement encompass more than mere surface travel. Further, defendants contended that the use of the land covered by the easement would serve primarily public, rather than private, purposes.

The trial court granted defendants' motion for summary disposition, ruling that the terms "roadway purposes" in the settlement agreement and "improvement" in the actual easement grant were ambiguous. However, it found that the developments benefited the public and were thus within the scope of the easement.

Plaintiffs appealed the trial court's ruling. In a split decision, the Court of Appeals majority held that the trial court reached the correct result, albeit for the wrong reason. *Blackhawk Dev Corp v Village of Dexter*, unpublished opinion per curiam of the Court of Appeals, issued January 27, 2004 (Docket No. 240790). The majority held that the language at issue was not ambiguous, but that the proposed developments were within the scope of the easement because they benefited the public. Notably, the Court of Appeals examined the language of both the easement grant and the settlement agreement. The dissenting judge

agreed that there was no ambiguity in the language, but he believed that the changes were not "improvements" to Dan Hoey Road and, thus, were outside the scope of the easement. Plaintiffs' motion for reconsideration was denied, and plaintiffs sought leave to appeal in this Court. In lieu of granting plaintiffs' application for leave to appeal, we ordered oral argument on the application. 471 Mich 905 (2004).

## III. STANDARD OF REVIEW

The extent of a party's rights under an easement is a question of fact, and a trial court's determination of those facts is reviewed for clear error. *Unverzagt v Miller*, 306 Mich 260, 266; 10 NW2d 849 (1943), citing *Harvey v Crane*, 85 Mich 316, 322; 48 NW 582 (1891). A trial court's dispositional ruling on equitable matters, however, is subject to review de novo. *Stachnik v Winkel*, 394 Mich 375, 383; 230 NW2d 529 (1975). The decision to grant or deny summary disposition is also reviewed de novo. *Stewart v Michigan*, 471 Mich 692, 696; 692 NW2d 376 (2004).

## IV. ANALYSIS

This case presents the straightforward question whether Dexter Development's desired developments fall within the scope of the village of Dexter's easement. The inquiry does not center, as defendants seem to suggest, on

8

whether defendants' proposed developments afford the public at large some general benefit. Further, the analysis of this issue is not affected by the fact that a private developer instituted the proposed developments. Rather, this Court must analyze simply whether the developments are within the scope of the granted easement.

The existence of an easement necessitates a thoughtful balancing of the grantor's property rights and the grantee's privilege to burden the grantor's estate. And while the easement holder's rights are ultimately "'"paramount . . . to those of the owner of the soil,"'" the latter's rights are subordinate only to the extent stated in the easement grant. *Cantieny v Friebe*, 341 Mich 143, 146; 67 NW2d 102 (1954), quoting *Hasselbring v Koepke*, 263 Mich 466, 475; 248 NW 869 (1933), quoting *Harvey, supra* at 322. Consequently, "[t]he use of an easement must be confined strictly to the purposes for which it was granted or reserved." *Delaney v Pond*, 350 Mich 685, 687; 86 NW2d 816 (1957).

A fundamental principle of easement law is that the easement holder—here, the village—cannot "make improvements to the servient estate if such improvements are unnecessary for the effective use of the easement or they unreasonably burden the servient tenement." *Little v Kin*, 468 Mich 699,

9

701; 664 NW2d 749 (2003), citing *Crew's Die Casting Corp v Davidow*, 369 Mich 541; 120 NW2d 238 (1963), *Unverzagt*, *supra* at 265, and *Mumrow v Riddle*, 67 Mich App 693, 700; 242 NW2d 489 (1976). Stated differently, "'It is an established principle that the conveyance of an easement gives to the grantee all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement.'" *Unverzagt*, *supra* at 265, quoting 9 RCL, p 784. And "[t]he use exercised by the holders of the easement must be reasonably necessary and convenient to the proper enjoyment of the easement, with as little burden as possible to the fee owner of the land." *Id.*

From these principles evolves a two-step inquiry: whether the proposed developments are necessary for the village's effective use of its easement and, if the developments are necessary, whether they unreasonably burden plaintiffs' servient estate. *Id.* Of course, the need to answer the second question is obviated where the first question is answered in the negative.

The answers to these inquiries originate in the language or express reservations of the grant. See *id.* at 266-267. The task of determining the parties' intent and interpreting the limiting language is strictly confined to the "four corners of the instrument" granting the easement.

10

*Hasselbring*, *supra* at 477. Only where the language in the granting instrument is ambiguous may this Court examine evidence extrinsic to the document to determine the meaning within it. *Little*, *supra* at 700.

Thus, our first task is to determine whether the language of the granting instrument is ambiguous. The instrument states that the grantor grants to the village of Dexter "an easement for the purposes of relocating, establishing, opening and improving Dan Hoey Road in the Village of Dexter, Washtenaw County, Michigan . . . ." The only document incorporated by reference is the document that sets forth the legal description of the land subject to the easement. As such, our interpretation focuses on the language, "relocating, establishing, opening and improving Dan Hoey Road . . . ." The parties seem to agree that out of the four terms, the term "improving" is of paramount relevance.[3]

There is nothing technical or unique about the word "improving" in this context that would require us to rely on anything other than its common sense meaning. But the question is not so much whether defendant Dexter

---

[3] Notably, defendants do not argue that the developments purport to "open" Dan Hoey Road, which undermines the dissent's attempt to argue otherwise.

Development has proposed "improvements" in the sense of developments that help "improve" something, for certainly these developments could be considered "improvements" in the general sense of the word. The more refined question is whether the developments "improve" Dan Hoey Road.[4] A close examination of the record reveals no evidence supporting defendants' claim that the proposed developments are within the scope of the express easement.

According to zoning officer Keller, Kingsley's revised development plan included two access roads across the land covered by the easement, and sidewalks, utilities, trees, and "general public improvements" on that land. Clearly, the access roads served to connect the commercial complex to Dan Hoey Road rather than to complement Dan Hoey Road itself. The utility, water, and sewer lines served to connect Kingsley's development to main utility, water, and

---

[4] The dissent reads too much into the comment that the installations could, on some general level, be considered "improvements." See *post* at 5-6. If the debate were truly over whether roads, sidewalks, and grading are "improvements," certainly there would be as many countering views as supportive ones. But our task is not simply to determine whether the proposed installations are "improvements," but whether, as we clearly state, the installations improve *Dan Hoey Road*. Likewise, dictionary definitions of "improvement" do nothing to resolve whether sidewalks, utilities, and lighting improve *Dan Hoey Road*, so the dissent's citation of the dictionary is ineffective. See *post* at 5.

sewer lines. The sidewalks and lighting on the land covered by the easement were not sidewalks and lighting for Dan Hoey Road, but sidewalks and lighting for the private commerce center and surrounding area. Not one of these developments could be said to be for the purpose of improving Dan Hoey Road.[5] Without question, Kingsley's planned use of the land covered by the easement served the

[5] Kingsley claims he believed that the village "required" one of the access roads on his site plan, but the evidence shows only that the village asked Kingsley to align the road–which appeared on Kingsley's original site plan and every one thereafter–with an opposing road so as to create a four-way intersection. Indeed, village zoning officer Keller could point to nothing that required the road, and she testified that Kingsley's two other access roads by way of Dexter-Ann Arbor Road were sufficient for ingress and egress purposes. As such, to the extent defendant Dexter Development argues that public safety reasons compelled its use of the land subject to the easement, we find that argument unpersuasive.

Moreover, the fact that Kingsley offered to dedicate the developments to the public does not change the analysis. See *post* at 3 n 1. While it is of course true that the village can open streets, install sidewalks, and landscape, see *post* at 10, that says nothing about whether a village can undertake those projects under an easement it holds. Regardless of who initiates the project, the analysis is the same. For example, had the village endeavored to construct these developments, we would conduct the same analysis conducted in this case to determine whether the proposed developments are within the easement's scope. It is unclear why the dissent insists that our analysis hinges on who proposed the developments and on subjective motivations. See *post* at 9-11.

13

exclusive purpose of furthering and enhancing his private

complex.[6]

---

[6] The dissent proffers that *Unverzagt, supra,* supports its conclusion that consistent with the parties' intent, the proposed developments here are reasonably necessary to improve and open Dan Hoey Road. *Post* at 6-8. In *Unverzagt,* this Court resolved the question of reasonableness of use against the grantor of an easement where the question was whether the grantor could preclude the easement holders' invitees from using the easement to deliver goods to the easement holders. This Court held that use by the invitees was incidental and necessary. *Unverzagt, supra* at 265-266.

The dissent's simplistic comparison disregards several critical differences between *Unverzagt* and the case at hand. First and foremost, the village holds the easement in question here, not Dexter Development. Thus, the commercial traffic will not serve the easement holder as the delivery traffic did in *Unverzagt*. In that sense alone, the commercial traffic is not "incidental" to the easement. Moreover, this Court crafted its opinion in *Unverzagt* restrictively:

> This does not mean that any and all invitees of a cottage owner may have the right to use the streets. To so hold, would mean that a cottage owner might invite the use of the streets by conventions, picnics, assemblies in general. Such use would defeat the purpose as well as the desires of all parties. Nor do we go to the extent of holding that hawkers and peddlers of goods, wares and merchandise may use the private streets in the park for their own purposes, even at the invitation of cottage owners. [*Id.* at 266.]

Thus, this Court clearly recognized, as we must here, that permitted easement use is not unlimited but must conform to the purposes set forth by the parties in the easement grant.

14

Critical to our analysis is that village agents testified that the proposed access roads were not "improvements" to Dan Hoey Road and that none of the proposed developments was necessary with regard to Dan Hoey Road. Village zoning officer Keller testified that the village had no reason to construct any of Kingsley's proposed developments. Clearly, the evidence fails to establish that the proposed developments fell within the scope of the village's limited property interest—an easement for the express purpose of improving Dan Hoey Road. In fact, the developments are so clearly unrelated to "improving" Dan Hoey Road–in both concept and physical proximity–that they cannot be said to fall within the scope of the village's easement, which was secured to improve not

---

Further, the dissent cursorily concludes, without record support or analysis, that "landscaping and drainage ponds reasonably could improve Dan Hoey Road . . . ," and "[a]ccess drives and sidewalks would 'improve' and 'open' the road . . . ." *Post* at 6, 7 n 5. We disagree. First, Dan Hoey Road was already "opened," according to the village. Second, the dissent asserts that landscaping and drainage ponds "control[] rainwater runoff, thereby enhancing the safety and life of the road." *Post* at 6. Limiting the amount of vehicles on Dan Hoey Road might enhance the safety and life of the road as well, but not every conceivable effect on Dan Hoey Road renders it an "improvement." We decline to read the word "improve" that broadly.

the general surrounding area and corporate development, but Dan Hoey Road itself.[7]

Where the rights to an easement are conveyed by grant, neither party can alter the easement without the other party's consent.[8] *Douglas v Jordan*, 232 Mich 283, 287; 205

---

[7] Despite defendant Dexter Development's heavy emphasis on its theory that the two access roads across the land covered by the easement are necessary for the general safety of the area, we need not address that contention. Officer Keller testified that having only one access point into Kingsley's development created additional traffic concerns on Dexter-Ann Arbor Road. However, the need to alleviate traffic or congestion concerns on Dexter-Ann Arbor Road does not broaden the scope of the village's easement. Further, the mere fact that the village asked Kingsley to alter his plan to align one of the access roads with an opposing road does not speak to whether the access road was for the *purpose* of improving Dan Hoey Road. Thus, the public safety arguments advanced by Dexter Development are misplaced.

[8] We have no quarrel with the proposition that an easement is a permanent interest in land, see post at 13, and we do not hold otherwise. But the permanency of the grant does not control or even speak to the *way* in which the easement may be used. The dissent states that plaintiffs "may not be heard to complain that Dexter Development's proposed uses involve more land than was in service." *Id.* But again, the dissent misses a finer point. Plaintiff complains not about geography, but about purpose. The dissent finds that the easement "contains no language preventing use of an increased amount of the land encompassed within it." *Id.* As such, it concludes that it can "infer that the parties intended to allow the area used in the easement to expand to maintain the easement's utility." *Id.*

The dissent reads its cited Restatement passage too loosely. See *post* at 13-14. The Restatement does not allow for haphazard inferences of parties' intent. It states, "The determination [of an easement's scope] is

16

NW 52 (1925), citing *Powers v Harlow*, 53 Mich 507; 19 NW 257 (1884). When the village, as the dominant estate, authorized developments on the servient land for the benefit of another parcel of land, the village improperly altered the easement without plaintiff's consent. By so doing, the village materially increased the burden on plaintiff's servient estate by imposing new burdens that were not contemplated at the time of the easement grant, contrary to general easement principles.[9] See *Delaney*,

---

primarily one of fact, based on inferences that may be drawn from the language and circumstances, but the outcome in any particular case may be affected by the level of generality with which the purpose is defined." 1 Restatement of Property, 3d, § 4.10, comment *d*, p 595. The comment goes on to explain that, for instance, if an easement grants "access," the word "access" may be interpreted more broadly than if the words "ingress and egress to people and vehicles" had been used. Thus, rather than permitting a court to guess, the Restatement advises that where words are more general, the intent will be determined accordingly. Here, the task is made simpler by the fact that we need not determine what the parties meant by the general word "improve," but rather what they meant by the more specific parameter "improve Dan Hoey Road." The phrase "improve Dan Hoey Road" is self-limiting and must be given its ordinary meaning. We disagree that the fact that the phrase was not further elaborated on permits unlimited use of the burdened land.

[9] The dissent somewhat puzzlingly concludes that the developments fall within the scope of the easement because where there were once four residential driveways, there would now be "only" two commercial access roads. *Post* at 12. Ignoring for a moment that the proposed access road across the parcel subject to the easement does nothing to *improve Dan Hoey Road*, it is difficult to understand how one would conclude that a burden lessens, rather than

17

*supra* at 687; *Barbaresos v Casaszar*, 325 Mich 1; 37 NW2d 689 (1949).  The easement was not procured for the benefit of Kingsley's property, nor was it procured for developments unrelated to Dan Hoey Road that may arise in the future.  This is not to say that once the village relocated Dan Hoey Road, it had no further rights to impose further developments *in relation to* the road.  But while the village's easement is unlimited in duration, it is not unlimited in scope.  Thus, the village was and remains obliged to ensure that any use of the land covered by the easement strictly comports with the purpose of the easement as originally granted:  relocating, establishing, opening, and improving *Dan Hoey Road*.

Defendants argue that our inquiry regarding the scope of the easement should extend to the language found in the

increases, when in lieu of four residential driveways, there are instead two roads to a large commercial complex. Not only is the dissent's conclusion odd, it is also devoid of record support.  Another strange conclusion by the dissent is that because plaintiff was unable to build on the parcel, "Blackhawk's quiet enjoyment of the parcel would not be impermissibly disturbed by increased traffic whether on the new access drives or on several lanes of through traffic."  *Post* at 12  The fact that plaintiff could not develop its parcel seems to us to doubly support a conclusion that where that parcel is commercially developed by a commercial neighbor, quiet enjoyment is vastly disturbed.  And the fact that plaintiffs did not "question" the easement when they purchased their land does not extinguish their right to contest improper uses of the easement.

settlement agreement that was reached between Kingsley, as a predecessor in interest to the servient estate, and the village. The settlement agreement referred to the easement as one for "public roadway purposes." Defendants argue that this language broadens the scope of the easement beyond general private easement principles because it references a "public roadway." The effect, according to defendants, is essentially that the land subject to the easement can be used for any purpose the village desires as long as the purpose can be said to confer some general benefit to the public. Thus, defendants argue, because the access roads, utilities, sidewalks, and commerce center generally benefit the public as a whole, they are permissible uses of the land covered by the easement.

It is true that "[i]f the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement." *Little*, *supra* at 700. It is also true that where an ambiguity exists, "the courts will try to arrive at the intention of the parties and in accordance therewith . . . ." *Farabaugh v Rhode*, 305 Mich 234, 240; 9 NW2d 562 (1943). However, considering extrinsic evidence in the absence of ambiguous language is "clearly inconsistent with the well-established principles of legal interpretation

19

. . . and is thus incorrect." *Little*, *supra* at 700 n 2. We find nothing ambiguous about the easement grant's limiting language. Thus, the trial court erred by considering language extrinsic to the express easement grant.

As a corollary, defendants further argue that because a public entity holds the easement, the scope of permissible uses is broader, and the easement can be used for any public purpose. For this proposition, defendants rely on *Eyde Bros Dev Co v Eaton Co Drain Comm'r*, 427 Mich 271; 398 NW2d 297 (1986), and *Village of Grosse Pointe Shores v Ayres*, 254 Mich 58; 235 NW 829 (1931). We held in *Eyde* that "a public easement in a highway dedicated by user is not limited to surface travel, but includes those uses, such as the installation of sewers, contemplated to be in the public interest and for the public benefit." *Eyde*, *supra* at 286. But as correctly noted by the dissenting Court of Appeals judge in this case, neither *Eyde* nor *Grosse Pointe Shores* involved "a situation where the proposed improvements ran across or under land that was owned in fee simple by a private party and was not established as, or being used as, a public roadway." Slip op at 2. Rather, those cases, at most, stand for the proposition that an easement for roadway purposes includes

all appropriate purposes to which roads and streets are actually devoted, *provided* that they occur on or under the surface of the roadway itself.[10]  This comports with the statutory grant for the laying of utilities "upon, over, across, or under" public roads.  See MCL 247.183(1).

However, as the dissenting Court of Appeals judge stated in this case, "the 'improvements' sought by defendants do not merely affect the surface or subsurface of Dan Hoey Road," but they also affect the unimproved portion of plaintiff's property that was subject to the easement.  Slip op at 2.  Plaintiffs have not dedicated fee simple property to a public entity for a public road.  Rather, the village holds a more limited property interest—an express easement for the express purpose of improving Dan Hoey Road, and nothing else.  That a public entity

---

[10] In *Grosse Pointe Shores, supra* at 64, we first rejected, as a matter of public policy, certain conditions that the defendants had attached to their dedication of land for roadway purposes that would have placed restrictions on the installation of sidewalks, utilities, and sewer lines and on paving or widening the road.  After finding the conditions invalid, we outlined what types of improvements to a highway dedicated by user were permissible.  We noted that the improvements at issue were "in territory which *had been and continued to be part of the street*." (Emphasis added.)  In *Eyde, supra* at 296, we addressed the "issue of compensation for new uses of public easements *within streets* dedicated by statute." (Emphasis added.)  Thus, improvements made pursuant to a public easement are limited to those uses that fall within the right-of-way of the roadway itself.

holds an easement and the easement is for a public road transforms neither the nature nor the scope of the granted easement, contrary to the dissent's attempt to do so. See *post* at 5-6. "Public interest" and "public benefit" are not valid reasons to allow the municipality to obtain more property rights than were granted. Thus, both *Eyde* and *Grosse Pointe Shores* are inapplicable.

## V. CONCLUSION

The express language of the easement grant in this case is not ambiguous, and there is no evidence in the record that the proposed developments were within the scope of the easement. As such, the village improperly authorized the use of its easement for purposes that were unrelated to the improvement of Dan Hoey Road. For these reasons, we reverse the judgment of the Court of Appeals and remand this case for further proceedings. On remand, the trial court should enter a declaratory judgment and grant injunctive relief in plaintiffs' favor and conduct further proceedings on plaintiffs' claim for trespass damages. We do not retain jurisdiction.

Michael F. Cavanagh
Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

22

S T A T E   O F   M I C H I G A N

SUPREME COURT

BLACKHAWK DEVELOPMENT CORPORATION
and DEXTER CROSSING, L.L.C.,

    Plaintiffs-Appellants,

v                                      No. 126036

VILLAGE OF DEXTER and DEXTER DEVELOPMENT,

    Defendants-Appellees.

_____

YOUNG, J. (*concurring*).

I fully concur with the majority opinion. I write separately, however, in response to the dissent's contrary assertion, to emphasize that the majority opinion does not suggest that John Kingsley's motivations are dispositive of the village's motivations. The majority opinion merely provides a complete recitation of the background information for the purpose of providing a full understanding of the transaction. Because he is a third party who enjoys no cognizable interest in the property burdened by the easement, Kingsley's purposes in proposing, initiating, designing, or financing the improvements to the easement are absolutely irrelevant in determining whether

the easement holder may lawfully make the proposed developments to the easement.

Thus, as a threshold matter, the easement holder must assert that the proposed improvements to the easement are within the scope of the easement.  Secondly, the developments to the easement must be *objectively* congruent with the purpose permitted in the easement. In this case, the scope of the easement is to "improv[e] Dan Hoey Road . . . ." The village does not maintain that the purpose behind the proposed developments is to "improve Dan Hoey Road." Because the village failed to make the initial showing that the developments were initiated for the purpose of improving Dan Hoey Road, there is no basis to conclude that the desired developments are objectively within the scope of the easement. Thus, the proposed developments are outside the scope of the easement as a matter of law.

Robert P. Young, Jr.

2

STATE OF MICHIGAN

SUPREME COURT

BLACKHAWK DEVELOPMENT CORPORATION,
a Michigan corporation, and
DEXTER CROSSING, LLC, a Michigan
limited liability company,

    Plaintiffs-Appellants,

v                             No. 126036

VILLAGE OF DEXTER and
DEXTER DEVELOPMENT,

    Defendants-Appellees.
_____

KELLY, J. (*dissenting*).

Defendant village of Dexter obtained the easement that is under scrutiny in this case to improve Dan Hoey Road. Defendant Dexter Development proposed to install utility lines, street lighting, sidewalks, and landscaping on the property subject to the easement and dedicate them to the village. It also proposed to widen one private access drive on the property and consolidate into one three other private access drives that connect Dan Hoey Road with the adjacent private parcel.

The majority holds that these projects are not within the scope of the easement. To reach this conclusion, it erroneously relies on the subjective motivation for the projects. But the motivation should be irrelevant in

determining whether a proposed use lies within the scope of an easement.

Because I believe that the projects in question open and improve Dan Hoey Road, they fall within the scope of the easement. Hence, I would affirm the decisions of the trial court and the Court of Appeals in favor of defendants.

## FACTUAL BACKGROUND

The village obtained an "easement for the purposes of relocating, establishing, opening and improving Dan Hoey Road" from Dexter Development, which owned the land. The village used the easement to relocate the road to the south and to widen it.

The property to the north of the road had been divided into four parcels. Each had direct access to the old road. To create access for them to the new Dan Hoey Road, the village installed four new access drives. The old and the new roads together with the old and new access drives are on the land that is subject to the easement. Dexter Development did not object. Moreover, plaintiff Blackhawk Development had not objected to continued use of the drives when it bought the land over which the easement runs.

Dexter Development later acquired the four parcels to the north of the road in the hope of developing them. It

2

wished to have three of the four access roads consolidated into one, the fourth widened, and street lighting, landscaping, sidewalks, and underground utilities installed on the easement property. Eventually, it obtained a license from the village to make the improvements on the easement property itself. In its brief, Dexter Development indicated that it promised to dedicate the improvements to public use.[1]

Plaintiff Blackhawk Development, which had refused to sell to Dexter Development the parcel over which the easement runs, filed suit to enjoin construction of the improvements. Plaintiffs contended that the projects were not to improve Dan Hoey Road.

### ANY PROPOSED USE OF AN EASEMENT IS REQURIED TO BE WITHIN THE EASEMENT'S SCOPE

The purpose of an easement is determined by the parties and ascertained by applying principles similar to those used when contracts are construed. 1 Restatement Property, 3d, § 4.1, comment *d*, p 499 (2000). The terms of the easement conveyance are given their ordinary meaning in light of the surrounding circumstances. *Newaygo Mfg Co v*

---

[1] I do not represent that Dexter Development or its owner acted as the village's agent. *Ante* at 13 n 5. Rather, Dexter Development attempted to do what the village could have done with the intention of dedicating the improvements to the public.

*Chicago & W M R Co,* 64 Mich 114, 122-123; 30 NW 910 (1887); 25 Am Jur 2d, § 18, p 516, § 73, p 571; 1 Restatement Property, 3d, § 4.1, comment *d*, p 499.  If a specific use is not enumerated in the easement conveyance, the surrounding circumstances may be considered to ascertain the intent of the parties.  *Newaygo* at 122-123, 1 Restatement Property, 3d, § 4.10, comment *a*, p 592, and comment *d*, p 595.  See also *Thies v Howland,* 424 Mich 282, 293; 380 NW2d 463 (1985).

The majority agrees with the principle enunciated by this Court in *Unverzagt v Miller*[2] that "'[t]he use exercised by the holders of the easement must be reasonably necessary and convenient to the proper enjoyment of the easement, with as little burden as possible to the fee owner of the land.'"  *Ante* at 10, quoting *Unverzagt* at 265.

In *Unverzagt*, the defendant granted the plaintiffs an easement to use the private streets of the subdivision to gain access to their cottages.  The plaintiffs wanted local merchants to be able to deliver goods to them.  The defendant claimed that the easement did not permit others, not social guests of the plaintiffs, to use the streets without the defendant's permission.

---

[2] 306 Mich 260; 10 NW2d 849 (1943).

This Court held that the condition laid down by the defendant unreasonably restricted the right of the plaintiffs. The proper test, we ruled, is whether it was reasonably necessary for the use and enjoyment of the easement that plaintiffs could invite nonsocial guests to use the private streets. We held that holders of the easement had the right to use it limited only by what was necessary to and reasonable in its use. This included allowing nonsocial guests to make deliveries over it. It did not include use by the general public. *Unverzagt* at 265-267.

In this case, the easement is "for . . . opening and improving Dan Hoey Road." Sidewalks, utilities and lighting systems are improvements to highways. Black's Law Dictionary (6th ed), p 757. Despite implications to the contrary,[3] the majority opinion concedes that Dexter Development's proposed projects are improvements. *Ante* at 12.[4]

---

[3] *Ante* at 13 n 5, 15 n 6.

[4] See also *Warren v Grand Haven,* 30 Mich 24, 27-28 (1874) (dedication of land to a roadway includes constructing sewers), *Village of Grosse Pointe Shores v Ayres*, 254 Mich 58, 64; 235 NW 829 (1931) (sewer, water, gas, lighting, and telephone systems are highway improvements).

5

It is readily apparent that landscaping and drainage ponds reasonably could improve Dan Hoey Road by controlling rainwater runoff, thereby enhancing the safety and life of the road. Access drives and sidewalks would "improve" and "open" the road by facilitating public access to and from it by vehicles and pedestrians on the north. By granting Dexter Development permission to install these improvements, the village authorized the improvement and opening of Dan Hoey Road.

The majority opinion's factual comparison of this case with *Unverzagt* shows that there are limits to *Unverzagt's* application here. *Ante* at 14 n 6. The easement in that case was private and the issue concerned use of an easement by invited guests of the easement holders. Here, the easement is held by a government entity and is for a road used by the general public. An easement to improve and open a public road is by its terms more expansive than an easement to access a private road.

The Court's decision in *Unverzagt* to prohibit general public use was necessary to fulfill the parties' intentions to create a private easement to allow access to certain cottages. The ruling disallowed use of the easement for purposes other than access, such as picnics, because they would defeat the purpose of the easement.

6

In the case before us, the property owner granted an easement for public purposes to a governmental entity. The parties intended to create an easement that inherently encompassed broader uses than those allowed in *Unverzagt*.[5]

The surrounding circumstances confirm that the parties who created the easement intended that it could be used for projects such as those proposed by Dexter Development. The grantor's view of the scope of the easement is more persuasive of the scope than the view of a later purchaser of the burdened estate. *Crew's Die Casting Corp v Davidow,* 369 Mich 541, 546; 120 NW2d 238 (1963).[6] A party may not unilaterally change the scope of an easement once conveyed.

---

[5] The majority's discussion of *Eyde Bros Dev Co v Eaton Co Drain Comm'r*, 427 Mich 271; 398 NW2d 297 (1986), and *Ayres, supra*, does not support its determination of the scope of this easement. *Ayres* involved an express grant and *Eyde Bros* involved a highway created for public use. Both easements were geographically limited to the roadways involved.

In this case, there is no requirement that the proposed improvements be on or under the existing roadway. This easement explicitly encompasses a much larger area. As in *Ayres,* the improvements would be on the portion subject to the easement, and they would directly affect the road. They would open it in the case of the access drives and improve it in the case of the lighting, sidewalks, driveways, and landscaping.

[6] See also *Schumacher v Dep't of Natural Resources*, 256 Mich App 103, 107; 663 NW2d 921 (2003), citing *Tobias v Dailey*, 196 Ariz 418, 421; 998 P2d 1091 (Ariz App, 2000); *Tungsten Holdings, Inc v Kimberlin*, 298 Mont 176, 182; 994 P2d 1114 (2000); *Thompson v Whinnery*, 895 P2d 537, 541-542 & n 8 (Colo, 1995).

*Schadewald v Brulé,* 225 Mich App 26, 36; 570 NW2d 788 (1997), citing *Douglas v Jordan,* 232 Mich 283, 287; 205 NW 52 (1925). See also *Schumacher v Dep't of Natural Resources*, 256 Mich App 103, 106; 663 NW2d 921 (2003).

The village obtained an easement over the whole parcel rather than merely over the new roadbed. The Court of Appeals wrote that the village's attorney testified

> the crescent-shaped piece of land . . . was meant to be used to provide rights of way to the north residences that were separated from the road. [Unpublished opinion per curiam of the Court of Appeals, issued January 27, 2004 (Docket No. 240790).]

Dexter Development was owned by the grantor of the easement. His failure to object to the access drives when he granted the easement suggests that the parties who created it understood that opening the road included building access roads.

The majority opinion fails to take proper account of the factual circumstances of this case. I would hold that, because Dexter Development's activities will improve and open Dan Hoey Road, they are within the scope of the easement.

## THE SUBJECTIVE MOTIVATION TO USE AN EASEMENT IS IRRELEVANT

Motive, in the strict sense, is distinct from purpose. Motive has been described as the desire that prompts a

8

person to act, whereas purpose is the result to be obtained. *Hudson v American Oil Co,* 152 F Supp 757, 770 (ED Va, 1957). Courts do not normally inquire into the motive behind the exercise of a right. *Burke v Smith,* 69 Mich 380, 388; 37 NW 838 (1888).

The majority opinion asserts that its analysis does not consider that these improvements were initiated by a private developer. *Ante* at 9. But the majority's subsequent focus on the fact that the improvements in question are being proposed at the behest of a private developer belies this assertion. The opinion states, "[Dexter Development's] planned use of the land covered by the easement served the exclusive purpose of furthering and enhancing [its] private complex." *Ante* at 13-14. The majority asserts that defendant Dexter Development sought to use the village's easement to accomplish something it could not accomplish otherwise. *Ante* at 4.

These considerations are improper. The Court's examination of the terms of the conveyance and the surrounding circumstances should be an objective inquiry. The subjective motivations of the interested parties are irrelevant. The pertinent question is whether the improvements fulfill the easement's purpose to improve and open Dan Hoey Road. The village is not obligated to

9

justify its motives, as the majority and concurrence seem to require.

Also, the fact that Dexter Development rather than the village is arguing for the improvements is not remarkable. Dexter Development agreed to indemnify the village against legal action arising from the proposed improvements. Hence, it is to be expected that Dexter Development would advance the legal arguments supporting the proposed improvements in place of the village.

When viewed objectively, the purpose of the improvements is to open and improve the road. The fact that a developer seeks to implement them rather than the village has no legal relevance. The improvements could be undertaken by the village directly, at its discretion. Villages may open streets. MCL 67.12. They may install sidewalks or require property owners to install them. MCL 67.8. They may also landscape. MCL 67.21.

Moreover, the village was not required to have made a decision to further improve and open Dan Hoey Road before a developer requested it, as the majority implies. *Ante* at 6. It could decide to install landscaping and sidewalks for aesthetic reasons at any time. Also, it could decide at any time to install the improvements in question to

10

enhance the road's safety, longevity, and utility as a transportation artery.

Justice Young in his concurrence asserts without reference to authority that the village has an initial burden to show that the proposed improvements are within the scope of the easement. Such a burden contradicts standard practice that puts the onus on the party making a claim to articulate and substantiate it. See MCR 2.116(c)(8). In this case, the burden rightfully is on plaintiffs to assert and show that the proposed improvements exceed the scope of the easement. *Stewart v Hunt,* 303 Mich 161, 163; 5 NW2d 737 (1942).

Justice Young appears to be suggesting as well that the village has the initial burden of showing that the underlying motivation for the improvements is consistent with the scope of the easement. This is inaccurate, and it belies his concurring argument that the parties' motivations are irrelevant to the disposition of the case.

### THE PROPOSED USES DO NOT UNREASONABLY BURDEN THE SERVIENT ESTATE

This Court has held that, where broad language in an easement permits uses not stated, those uses must not impose an additional or increased burden on the servient estate. *Crew's Die Casting Corp*, *supra* at 546, quoting

11

*Delaney v Pond*, 350 Mich 685, 687; 86 NW2d 816 (1957). In this case, the access drives and related improvements do not increase the burden. They fit squarely within the scope of what the parties intended. Where there were four access drives, there would be only two. They would consolidate the traffic running over the access drives.

Plaintiffs' burden would not increase by virtue of the fact that the access drives would service a commercial development rather than four residences. This Court has held that, generally speaking, a mere increase in the number of persons using an unlimited right-of-way to which land is subject is not an unlawful additional burden. *Henkle v Goldenson*, 263 Mich 140, 143; 248 NW 574 (1933).

In theory, Dan Hoey Road could be opened to encompass several lanes of through traffic over the entire parcel. If so opened, the increased traffic would not necessarily exceed the scope of this unlimited easement to open the road.

Under the village's zoning requirements, Blackhawk could not build on the parcel. Blackhawk's quiet enjoyment of the parcel would not be impermissibly disturbed by increased traffic whether on the new access drives or on several lanes of through traffic.

Plaintiffs may not be heard to complain that Dexter Development's proposed uses involve more land than previously was in service. An easement is normally a permanent interest in land. 1 Restatement Property, 3d, § 4.1, comment *b*, p 498. This one contains no language preventing use of an increased amount of the land encompassed within it. Thus, I infer that the parties intended to allow the area used in the easement to expand over time to maintain the easement's utility. 1 Restatement Property, 3d, § 4.10, p 592.

Plaintiffs should have expected that improvements of the kind contemplated here could be installed at some future day. They may not be heard to complain that that day has come. They have no grounds to assert that they did not understand the broad intention of the parties who created the easement. They had record notice that the easement was in part to open and improve the road.

Plaintiffs had inquiry notice of access drives for the use of the property owners to the north, and they never questioned their propriety when they acquired the property. Although there were no distinct easements in the record for each driveway, plaintiffs had to know that the easement included access drives.

13

The effect of the proposed improvements on the servient estate in this case can be compared with the situation in *Delaney*, *supra*. There, the easement was between private parties for lake access. The Court correctly held that

> [a] principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden. See 17A Am Jur, Easements, § 115, p 723. [*Delaney* at 687.]

Mooring boats and sunbathing were not inherent in providing access to the lake, and they increased the burden on the servient estates. *Id.* By contrast, here the proposed improvements open Dan Hoey Road and improve it, and they do not increase the burden on the servient estate.

## CONCLUSION

It is irrelevant in this case that Dexter Development is a private developer. Its proposed projects are compatible with the purpose of and fall within the scope of the easement, which is to open and improve Dan Hoey Road. The actions of the parties who created the easement confirm this. Moreover, Dexter Development's proposed improvements do not unreasonably burden plaintiffs' estate.

14

I would affirm the decisions of the Court of Appeals and of the trial court. Dexter Development's proposed projects are within the scope of the easement.

                                    Marilyn Kelly