# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD FINCH and RUTH FINCH,

        Plaintiffs/Counter-Defendants-
        Appellees,

v

ELLEN KELLY and BEVERLY OSANTOWSKI,

        Defendants/Counter-Plaintiffs-
        Appellants.

UNPUBLISHED
June 14, 2018

No. 337493
Oakland Circuit Court
LC No. 2013-137593-CH

Before: SWARTZLE, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

Defendants appeal by right the trial court's second amended judgment, entered after a bench trial, granting an easement in favor of plaintiffs. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case presents a property dispute between plaintiffs and defendants, who are neighbors. Plaintiffs own two parcels of real property, located at 1585 and 1587 Stirling Avenue in Pontiac. Defendants own an adjacent parcel, located at 1581 Stirling Avenue. The three driveways leading to 1581, 1585, and 1587 Stirling, respectively, connect into one large driveway space, where the mouth of the common driveway meets the main street. Two blacktopped driveways split away from the shared driveway area and lead to 1581 Stirling and 1587 Stirling. A gravel driveway leading to 1585 Stirling is situated between the blacktopped driveways and is partially surrounded by an additional gravel area on defendants' property. This dispute primarily concerns the use of the gravel driveway. Although plaintiffs and their predecessors always assumed that they owned at least a 10-foot-wide portion of the gravel driveway, a survey of the property showed that plaintiffs only owned an approximately 4-foot-wide portion of the gravel driveway and that defendants owned the remainder of the gravel driveway area.[1] Plaintiffs had been using the gravel driveway to access 1585 Stirling since

---

[1] Evidence presented at the bench trial shows that the total gravel area was up to 20 feet wide in places.

-1-

purchasing the property in 1998. Additionally, the water and sewer lines for 1585 Stirling, which were installed by the prior owner, were located beneath a portion of the gravel driveway located on defendants' property.

After the survey was conducted, plaintiffs asked defendants to formally grant them an easement over the driveway. Although defendants had granted plaintiffs permission to use the driveway, they declined to grant an easement. Plaintiffs threatened a suit to quiet title to the disputed part of the driveway. Defendants responded by erecting a makeshift barrier on the boundary line of their property, encroaching onto the gravel driveway and hindering its use for accessing 1585 Stirling.[2] In 2013, plaintiffs filed a complaint to quiet title, seeking to have an easement declared by prescription or acquiescence. After a bench trial, the trial court entered an opinion and order granting an easement by prescription, an easement by acquiescence, as well as an easement by necessity, in favor of plaintiffs. The trial court held that plaintiffs had established an easement by prescription based on the continuous use of the driveway by a series of residents of 1585 Stirling. Additionally, the trial court found that an easement by acquiescence had been created, stating:

> Until the survey was completed in 2013, all parties and their predecessors . . . acted and acquiesced to 1585 Stirling having at the minimum a 10 foot wide driveway in terms of usable space immediately adjacent to the boundary of 1587 Stirling. It is important to note that . . . Defendants paved their driveway at 1581 Stirling[, but] they did not extend it to cover the gravel that they now claim to be theirs based on the survey.
>
> * * *
>
> The parties have treated the driveway boundaries in the same manner since at least 1978 . . . . The [c]ourt finds that Defendants have acquiesced to these boundaries by not paving the entirety of the gravel and by their failing to object to the use of the driveway at any time over the years, until the dispute occurred in 2013.

The trial court further found that an easement by necessity had been established based on the fact that snow plows and fire trucks could not easily access 1585 Stirling without using the entire gravel driveway.

The trial court's judgment was subsequently amended twice, following plaintiffs' second motion for reconsideration, ultimately granting plaintiffs an easement "the size of the entire gravel driveway as historically used by Plaintiffs, and by Plaintiffs' predecessors." The trial court denied defendants' motion for reconsideration of the second amended judgment. This appeal followed. On appeal, defendants do not challenge the trial court's determination that an

---

[2] Vehicular access to 1585 Stirling from the 1587 Stirling driveway was blocked by a stone retaining wall.

-2-

easement exists, but argue that the second amended judgment improperly expands the scope of the easement.

## II. STANDARD OF REVIEW

"The scope and extent of an easement is generally a question of fact that is reviewed for clear error on appeal." *Wiggins v City of Burton*, 291 Mich App 532, 550; 805 NW2d 517 (2011). A finding is considered clearly erroneous if " 'the reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding.' " *Morse v Colitti*, 317 Mich App 526, 534; 896 NW2d 15 (2016) (citation omitted).

## III. ANALYSIS

An easement is the right to use another person's land for a specified purpose. *Heydon v MediaOne*, 275 Mich App 267, 270; 739 NW2d 373 (2007). The land that is burdened by the easement is the servient estate, and the land that is benefitted by the easement is the dominant estate. See *D'Andrea v AT&T Michigan*, 289 Mich App 70, 73 n 2; 795 NW2d 620 (2010). The trial court granted plaintiffs an easement by prescription, an easement by acquiescence, and an easement by necessity, which encompassed the 10-foot-wide gravel driveway leading to 1585 Stirling, as well as the portion of the gravel area under which plaintiffs' underground water and sewer pipes are located.

Defendants do not challenge the holdings of the trial court granting plaintiffs an easement by prescription, acquiescence, and necessity. See *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679; 619 NW2d 725 (2000) ("An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years."); *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001) ("The doctrine of acquiescence provides that where adjoining property owners acquiesce to a boundary line for at least fifteen years, that line becomes the actual boundary line."), and *Charles A Murray Trust v Futrell*, 303 Mich App 28, 41; 840 NW2d 775 (2013) ("An easement by necessity may be implied by law where an owner of land splits his property so that one of the resulting parcels is landlocked except for access across the other parcel."). Rather, defendants challenge the trial court's finding that plaintiffs established an easement by prescription or necessity over the portion of the gravel driveway "as was historically used by Plaintiffs and Plaintiffs' predecessors," that extends beyond the 10-foot-wide gravel driveway to encompass the gravel area that contains their underground water and sewer lines. Defendants argue that the easement should *only* create a 10-foot-wide driveway to allow access to 1585 Stirling, and dispute whether plaintiffs' easement should also cover the portion of the gravel driveway where plaintiffs' water and sewer lines are buried. We disagree.

The trial court did not clearly err in establishing the scope of the easement, *Wiggins*, 291 Mich App at 550, because plaintiffs established that they possess an easement by necessity and an easement by prescription over the portion of the driveway covering their water and sewer lines. First, plaintiffs established an easement by necessity for access to their utilities. Testimony at the bench trial showed that a prior owner of 1585 Stirling had installed water and sewer lines underneath the gravel driveway, without permission from defendants, before selling 1585 Stirling to plaintiffs. The trial court observed that the prior owner had "installed water and

-3-

sewer lines from the house at 1585 Stirling down the middle of the gravel driveway to Stirling Avenue. Further they added gravel to the driveway and no one ever challenged the boundaries of the driveway." Plaintiffs noted that they are required to access the gravel area in order to make necessary repairs to their water and sewer lines because no other access point exists.

Although "no Michigan court has extended [the doctrine of easement by necessity] to encompass access to utilities," such easements "exist at common law in Michigan." *Tomecek v Bavas*, 276 Mich App 252, 274; 740 NW2d 323 (2007), aff'd in part, rev'd in part, vacated in part 482 Mich 484 (2008). "[T]he party asserting the right to the easement need only show that the easement is reasonably necessary, not strictly necessary, to the enjoyment of the benefited property." *Chapdelaine v Sochocki*, 247 Mich App 167, 173; 635 NW2d 339 (2001).

In order for plaintiffs to reasonably enjoy the benefited property, they must have the right to access the water and sewer lines underneath the gravel driveway in case they need repairs, but such access must place "as little burden as possible [on] the fee owner of the land." *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 42; 700 NW2d 364 (2005) (quotation marks and citation omitted). Plaintiffs have given no indication that they historically drove, parked on, or otherwise used the portion of the gravel driveway covering the water and sewer lines. Plaintiffs only requested, and the trial court only granted, an easement wide enough to allow them to access the water and sewer lines to make necessary repairs. Defendants have failed to explain how allowing plaintiffs a right of access to their water and sewer lines in case of an emergency will burden their use and enjoyment of the land. *Id*. Ultimately, the trial court properly concluded that plaintiffs were entitled to an easement by necessity over the parts of the gravel driveway under which their water and sewer lines are located. *Chapdelaine*, 247 Mich App at 173.

Additionally, an easement by prescription exists with regard to the area of the gravel driveway covering plaintiffs' water and sewer lines. As previously stated, an easement by prescription requires the open, notorious, adverse, and continuous use of defendants' property for a minimum of 15 years. *Plymouth Canton*, 242 Mich App at 679. The installation of underground utilities may be considered open and notorious "because [the location is] actually known to the owner[.]" See 1 Restatement Property, 3d, Servitudes § 2.17, comment *h*, p 273.

Defendant Kelly testified that she knew that the prior owner of 1585 Stirling had installed water and sewer lines under the contested portion of the gravel driveway. During cross-examination, defendant Kelly testified as follows:

> *Q.* And you saw the [prior owner] adding the sewer and water line to the driveway; is that right?
>
> *A.* . . . [Y]es.
>
> *Q.* And, in fact, that was down the middle of that gravel driveway, was it not?
>
> *A.* Ah, yeah.

* * *

*Q.* Okay. And so, in fact . . . the gravel driveway went all the way to your lawn while they were doing the work?

*A.* Um, there was . . . dirt piled onto our lawn, yes; and . . . [the past owner] knocked over some of our trees, yes.

*Q.* [Did y]ou deny them permission to be doing that kind of work on the driveway?

*A.* Uh, they had three children that were under eight, and I believe . . . it was necessary for them to do that.

*Q.* Okay . . . . [W]ould you have agreed to what the boundaries were at that point?

*A.* We had no discussion about the boundary at that point.

*Q.* Okay. So, clearly, you had no opposition to them using the driveway?

*A.* I allowed them to use the driveway.

*Q.* And, again, without telling them directly they had permission to do so, or anything?

*A.* I suppose that's true.

Therefore, plaintiffs' use of the water and sewer lines was open and notorious because defendants knew that the water and sewer lines had been installed, and as a result, "the prescriptive period . . . continue[d] to run even though evidence of the use [was] subsequently buried." 1 Restatement Property, 3d, Servitudes § 2.17, comment *h*, p 273.

Plaintiffs' use of the water and sewer lines was also adverse for the required 15-year period. Adverse or hostile use is defined as a use that is "inconsistent with the rights of an owner." *Killips*, 244 Mich App at 259. Plaintiffs' and their predecessors' use of the water and sewer lines was for their sole benefit and only burdened defendants' property. Therefore, the use of the water and sewer lines was adverse to, and inconsistent with, defendants' ownership of the property. *Id.* Finally, plaintiffs' and their predecessors' use of the water and sewer lines was continuous for more than 15 years. The prior owner of 1585 Stirling installed the water and sewer lines between 1989 and 1998. Plaintiffs began using the water and sewer lines when they purchased 1585 Stirling in November 1998, and continue to use them to the present day. There is no dispute that when plaintiffs filed their complaint, they had owned 1585 Stirling for 15 years. Accordingly, the trial court did not err by granting an easement that encompassed the

-5-

portions of the gravel driveway used to access 1585 Stirling, as well as the portions of the gravel driveway covering the water and sewer lines attached to 1585 Stirling. *Wiggins*, 291 Mich App at 550.

Affirmed.

/s/ Brock A. Swartzle
/s/ Douglas B. Shapiro
/s/ Mark T. Boonstra