*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN BURN and MARIA BURN,

Plaintiffs-Appellants,

v

DOUGLAS POROPAT, JENELLE POROPAT, JON FISHER, PAMELA FISHER, THOMAS PARDON, ERIKA PARDON and JOHN HARBAUGH,

Defendants-Appellees.

UNPUBLISHED
May 16, 2019

No. 342045
Oakland Circuit Court
LC No. 2017-156899-CH

Before: SAWYER, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Following a bench trial, plaintiffs appeal as of right a judgment denying in part their request for declaratory relief related to modifying and maintaining an existing prescriptive easement which includes a gravel roadway that is also a driveway to plaintiffs' home, and cul-de-sac turnaround area with a center island. We affirm.

## I. FACTS

In 1990, a first amended judgment was entered in a previous action granting plaintiffs' predecessor-in-interest—referred to as Parcel I—the prescriptive easement at issue, stating in relevant part:

IT IS FURTHER ORDERED that said easement shall be for the benefit of Parcels I and II, and more specifically:

A. For the purpose of providing a driveway for and ingress and egress to and from Parcels I and II; and,

B. to provide for parking and all other activities reasonably associated with driveways in residential areas, the uses in this Section B., however, to be only for the benefit of that portion of the easement immediately contiguous to Parcel I.

IT IS FURTHER ORDERED the owner of Parcel I shall maintain and be responsible for all costs incurred maintaining that portion of the above easement immediately contiguous to Parcel I.

In 2015, plaintiffs purchased the property at issue, i.e., Parcel I. Shortly thereafter, plaintiffs constructed a second garage on the parcel and installed a cement driveway that extends into the prescriptive easement. In September 2016, plaintiffs proposed to modify the easement as depicted in a "gravel drive improvement plan" that plaintiffs had drafted by Kieft Engineering, Inc., and which included relocating the gravel roadway, removing the turnaround island, and extending the radius of the turn. Plaintiffs sought approval from the current owners of the servient estate, defendants Douglas and Jenelle Poropat, and such approval was denied. Plaintiffs then filed this action.

In their first amended complaint, plaintiffs sought declaratory relief under MCR 2.605. Plaintiffs named the Poropats as defendants, as well as adjacent property owners Pamela and Jon Fisher, Thomas and Erika Pardon, and John Harbaugh.[1] Plaintiffs averred that their proposed improvements to the easement "would better facilitate the intent of the easement and would benefit the safety and welfare of all visitors and invitees to their home." Plaintiffs noted that large vehicles had been unable to "easily negotiate the radius of the turn as it presently exists." Plaintiffs also averred that the ingress and egress to their new garage was impaired by the existing construction of the turnaround island. And plaintiffs noted that the Poropats had interfered with plaintiffs' "maintenance obligations by removing shrubbery and installing large rocks that interfere with parking and negotiation of turns on the easement." Accordingly, plaintiffs requested declaratory relief, allowing them to make the proposed modifications to the easement as depicted in the gravel drive improvement plan and prohibiting the Poropats from interfering with their maintenance of the easement.

Plaintiffs attached to their complaint the letter that was sent to the Poropats seeking their approval of the proposed changes to the easement or their agreement to sell the underlying property for $2,500. Plaintiffs also attached the Poropats' response to the letter which indicated that plaintiffs' proposals to relocate their driveway on the easement and eliminate the turnaround island were unacceptable. The current configuration had been without issue for many years and only became an issue after plaintiffs built a second garage. Further, plaintiffs sought to move their driveway significantly closer to the Poropats' home which reduced the size of their backyard while increasing the size of plaintiffs' front yard. And the Poropats were not interested in selling the easement parcel. Moreover, the Poropats noted, plaintiffs then-recent renovations were in violation of the building permit they had obtained in that plaintiffs' concrete driveway encroached on the Poropats' property and other concrete slabs increased the impermeable surface and thereby the flow of drainage water onto the Poropats' property in violation of the drainage ordinance.

---

[1] Only the Poropat defendants participated in these proceedings; thus, our reference to "defendants" means the Poropat defendants.

-2-

Defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Defendants argued that plaintiffs had no legal right to relocate their driveway onto adjacent property. The fact that plaintiffs created a problem by constructing a second garage was an insufficient reason to unilaterally modify the existing prescriptive easement. Accordingly, defendants argued, this case must be dismissed. Defendants attached several exhibits to their motion, including the order granting plaintiffs' predecessor in title, Christine D. Travis, the prescriptive easement at issue, as well as her affidavit which stated that the road had been moved to its location in 1960, and that it had been used for purposes that included ingress and egress to all three homes located along the easement, parking, and burning trash. Travis further averred that she and her family maintained the road "by removing snow, mowing grass, and taking whatever other steps were necessary to keep the road in good repair since the road was moved in 1960."

Plaintiffs responded to defendants' motion for summary disposition, arguing that the relocation of their driveway would not further burden the servient estate because the driveway would still be within the boundaries of the prescriptive easement. Plaintiffs argued that the holder of a prescriptive easement "is allowed to do such acts as are necessary to make effective the enjoyment of the easement and the scope of this privilege is determined largely by what is reasonable under the circumstances." And in this case, plaintiffs claimed, the proposed improvements to the prescriptive easement driveway were reasonable and did not prejudice defendants. Further, plaintiffs argued, they were not requesting to expand the easement granted, but were merely seeking to use it as plainly intended. Accordingly, defendants' motion must be denied.

Defendants replied to plaintiffs' response, arguing that the driveway that plaintiffs sought to relocate had been in the same location since at least 1960 and they wanted to move it 10 feet closer to defendants' home. Further, defendants argued, it was clear from the judgment granting the prescriptive easement that plaintiffs only have the right to use the driveway in its current location and moving it would further burden defendants' property rights. It is well-established law that the owner of an easement may not unilaterally modify it, materially increase the burden on the servient estate, or impose a new and additional burden. Thus, defendants argued, plaintiffs' case must be dismissed.

On July 12, 2017, the trial court issued its opinion denying defendants' motion for summary disposition. The court first noted that because defendants' motion relied on evidence beyond the scope of the pleadings, summary disposition under MCR 2.116(C)(8) would be improper. Second, the court held that summary disposition under MCR 2.116(C)(10) was unwarranted because discovery was not complete and defendants failed to establish as a matter of law that plaintiffs requested relief was unreasonable under the circumstances.

On December 18, 2017, a bench trial was conducted. The first witness was plaintiff Maria Burn. She and her husband acquired the property at issue in May 2015. They added an attached garage as well as a cement driveway. The driveway does encroach into the easement by about eight feet which was necessary so that half of a car would not be standing on dirt while the other half was on cement. They had been mowing the easement because it was their obligation under the judgment to maintain the easement, but then Doug Poropat also began mowing the easement and Janelle Poropat removed bushes, a lilac tree, and all of the plants from the

turnaround island. The Poropats also placed several large rocks in the easement area which they refused to remove. When plaintiffs have visitors, they park on the gravel turnaround and there is not enough space for other vehicles to pass. In an effort to remedy some of the issues with the easement, plaintiffs engaged Kieft Engineering to draft a plan to redesign the cul-de-sac. The new proposed cul-de-sac would be about six or seven feet closer to the Poropats' property, but it would still be within the dimensions of the prescriptive easement.

The next witness was plaintiff John Burn. The Poropats placed about 25 boulders in the easement area which prevented vehicle parking. The biggest issues in this case were the maintenance of the easement and the parking issues. John believed that it was plaintiffs' responsibility to maintain the easement, including mowing the grass and maintaining the plants, trees, and other landscaping. He believed that because it is their driveway, his children should be able to play on it and he should be able to wash his car and do other activities on their driveway. John would ask the court to allow them to expand the roadway within the easement boundaries. He admitted that the cement in front of his new garage extended about ten feet into the easement, but it was necessary to permit the washing of cars and play activities on the driveway.

Following plaintiffs' testimony, they rested their case and defendants moved for involuntary dismissal, arguing in part that plaintiffs failed to show that the road expansion was necessary for the use of the road—although it may be convenient—and admitted that their new garage was the reason they sought expansion of the road. Further, the issue of which estate was obligated to maintain the easement was a question of law. Thereafter, the court took the matter under advisement.

On December 20, 2017, the trial court issued its findings of fact, conclusions of law, and order. The court noted that the plaintiffs were requesting to: widen the roadway portion of the cul-de-sac on the easement, allow their new cement driveway that encroaches into the easement, install a basketball court and water faucet on their new driveway, and have complete control over the maintenance and landscaping of the easement. In short, the court held, because the improvements were unnecessary, and only desirable or convenient because of conditions created by plaintiffs, they were not permissible. The court noted that the cul-de-sac had been in the same state for at least 57 years and met plaintiffs' necessary needs. Plaintiffs were aware of the easement and its limitations when they constructed the new garage which created the issues with the roadway and parking to which they complain. Further, the court held, maintenance of the cul-de-sac roadway surface (e.g., potholes, gravel, water drainage, fallen tree removal, and snow removal) and mowing the grass are plaintiffs' responsibility to permit vehicular travel and parking, but landscaping of the easement for purposes other than such maintenance (e.g., for aesthetics, conservation, and beautification) may be done by the Poropats, including the placement of boulders. Plaintiffs filed a motion for reconsideration, which was denied, and this appeal followed.

## II. ANALYSIS

Plaintiffs argue that widening the cul-de-sac roadway within the boundaries of the prescriptive easement is permissible, as is paving their driveway into the easement and installing a basketball court and water faucet by their new garage; thus, the trial court erred in holding that plaintiffs were not permitted to make these improvements. We disagree.

This Court reviews de novo the trial court's decision in a declaratory judgment action. *Toll Northville Ltd v Northville Twp*, 480 Mich 6, 10; 743 NW2d 902 (2008). "The extent of a party's rights under an easement is a question of fact, and a trial court's determination of those facts is reviewed for clear error." *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005). A finding is clearly erroneous if there is no evidentiary support for the finding or, after review of the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *Augustine v Allstate Ins Co*, 292 Mich App 408, 424; 807 NW2d 77 (2011). In a bench trial, we give deference to the trial court's special opportunity to judge the credibility of the witnesses. *Id*. at 424-425; see also MCR 2.613(C).

An easement is a limited right to use another's land for the specified purpose for which it was granted. *Delaney v Pond*, 350 Mich 685, 687; 86 NW2d 816 (1957); *Schadewald v Brulé*, 225 Mich App 26, 35; 570 NW2d 788 (1997). "An easement does not displace the general possession of the land by its owner, but merely grants the holder of the easement qualified possession only to the extent necessary for enjoyment of the rights conferred by the easement." *Id*. The scope of the easement holder's rights is determined by considering the language of the instrument that granted the easement, *Blackhawk Dev Corp*, 473 Mich at 42, and an easement cannot be modified unilaterally by either party once granted, *Schadewald*, 225 Mich App at 36. A prescriptive easement is generally limited in scope by the manner of use by which it was acquired and the manner of the previous enjoyment. *Lamkin v Hartmeier*, ___ Mich ___, ___; 919 NW2d 273 (2018), citing *Heydon v MediaOne*, 275 Mich App 267, 271; 739 NW2d 373 (2007) (quotation marks and citation omitted).

The holder of a prescriptive easement is generally permitted to do such acts as are necessary to make effective the enjoyment of the easement, and the scope of this right is determined largely by what is reasonable under the circumstances, but the burden on the servient estate may not be unreasonably increased. *Mumrow v Riddle*, 67 Mich App 693, 699; 242 NW2d 489 (1976). "The effective enjoyment of a prescriptive easement may involve not only repairs to preserve the servient tenement in the condition in which it was at the time the adverse use was being made but also improvements to it. However, repairs and improvements, but particularly the latter, will not be permitted if they unreasonably increase the burden on the servient tenement." *Id*. at 700. Thus, the "first determination is whether the repair or improvement is necessary to effective enjoyment of the easement" and, if it is necessary, the next determination is whether the repair or improvement "unreasonably increases the burden on the servient tenement." *Id*. The "effective enjoyment of the easement" also means the "effective use" of the easement. See *Blackhawk Dev Corp*, 473 Mich at 42.

In this case, plaintiffs argue that widening the cul-de-sac roadway, paving their new driveway into the easement, and installing a basketball court and water faucet by their new garage are permissible improvements. Again, the first determination is whether the improvements are necessary for the effective use of plaintiffs' easement. See *id*; *Mumrow*, 67 Mich App at 700. The 1990 first amended judgment granted a prescriptive easement for the purposes of providing a driveway for ingress and egress to their property, as well as for parking and other activities reasonably associated with driveways in a residential area. And plaintiffs' predecessor in title, Travis, who acquired the easement, averred in her affidavit that the easement had been used for ingress and egress to the homes along the easement, parking, and burning

trash. See *Heydon*, 275 Mich App at 271 (A prescriptive easement is generally limited in scope by the manner of use by which it was acquired and the manner of the previous enjoyment.).

On appeal, plaintiffs argue that "it is reasonably necessary for the contours of the cul-de-sac contained within the confines of the easement to be clearly established." Plaintiffs also claim that widening the cul-de-sac would assist the ability of vehicles to make the turnaround and that the improvements implicate health and safety issues. But as the trial court noted, the cul-de-sac turnaround and gravel roadway had been in its same state for at least 57 years without problems. The issues with the turnaround radius and parking arose during plaintiffs' construction of their new garage because of all of the vehicles involved in that construction project. Further, as the trial court concluded, any continuing issues with the width of the cul-de-sac roadway and parking resulted because of the addition of plaintiffs' new attached garage. And while plaintiffs claim that the improvements implicate health and safety issues, plaintiffs presented no evidence of any health and safety issues or any documented history of problems because of the width of the cul-de-sac roadway or its gravel surface. Plaintiffs also failed to present any evidence establishing that they were unable to use their driveway for ingress and egress to their property, for parking, or for other activities. The trial court concluded that plaintiffs' proposed improvements were not necessary and, after review of the entire record, there is no evidence that persuades us that the trial court was wrong or that we would have reached a different result. See *Augustine*, 292 Mich App at 424. We agree with the trial court that plaintiffs failed to establish that it was necessary to widen the cul-de-sac, pave their new driveway into the easement, and install a basketball court as well as water faucet on the easement for plaintiffs' reasonable use of the easement for ingress and egress to their home, for parking, and other activities for which a residential driveway is commonly used. While plaintiffs' decision to add a second garage may have made their use of the easement less than optimal or inconvenient, we are not persuaded that the trial court made a mistake when it concluded that the proposed improvements are unnecessary to the effective use of the easement as granted; thus, we affirm the trial court's judgment in this regard.

Next, plaintiffs argue that they have the unfettered right to maintain the easement; thus, the trial court erred in concluding that the Poropats could place boulders and landscaping items on the easement. We disagree.

An easement holder has the limited right to use the land burdened by the easement, but does not have the right to occupy and possess that land as does the fee owner of the land. *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 378; 699 NW2d 272 (2005) (quotation marks and citations omitted). "An easement does not displace the general possession of the land by its owner, but merely grants the holder of the easement qualified possession only to the extent necessary for enjoyment of the rights conferred by the easement." *Schadewald*, 225 Mich App at 35. Accordingly, the owner of the fee "may rightfully use the land for any purpose not inconsistent with the rights of the owner of the easement." *Cantieny v Friebe*, 341 Mich 143, 147; 67 NW2d 102 (1954) (quotation marks and citation omitted). However, a "party who enjoys an easement is entitled to maintain it so that it is capable of the use for which it was given." *Morse v Colitti*, 317 Mich App 526, 545; 896 NW2d 15 (2016).

Plaintiffs argue that under the terms of the 1990 amended judgment, they have the exclusive right and obligation to "maintain and be responsible for all costs incurred maintaining

[the] easement." Further, plaintiffs claim, "it is entirely reasonable and consistent with the intent of the easement when it was established [ ] that it would entitle [plaintiffs] to engage in landscaping the easement" because landscaping activities are reasonably associated with driveways in a residential area. We do not agree. As set forth above, defendants as owners of the property have rights that plaintiffs do not enjoy as easement holders. Plaintiffs' rights as easement holders are paramount to the rights of the fee owner only to the extent stated in the grant of the easement. *Blackhawk Dev Corp*, 473 Mich at 41. As long as defendants do not interfere with plaintiffs' limited rights to use the easement, defendants are entitled to exercise their ownership rights through the landscaping of their property. Defendants' property rights must be thoughtfully balanced with plaintiffs' privilege to burden their estate. See *id*. And landscaping for aesthetic or beautification purposes is a typical right of a property owner.

As the trial court concluded, plaintiffs have the obligation to maintain the easement "so that it is capable of the use for which it was given." *Morse*, 317 Mich App at 545. Thus, plaintiffs must maintain the easement for its use as a driveway for ingress and egress to their property, for parking, and other activities for which a residential driveway is commonly used. Maintaining the easement, however, does mean that plaintiffs have the right to turn it into a parking lot for their guests, although parking along the easement is clearly permissible. Rather, as the trial court held, plaintiffs have an obligation to maintain the roadway so that it is fit for vehicular travel and parking, as well to mow the grass as plaintiffs' predecessor did, but defendants as the property owners have the right to landscape the property for beautification, aesthetic, and conservations purposes irrelevant to the purpose of the easement. We also agree with the trial court that the placement of boulders, while a closer call, are within the rights of defendants, but we caution that the boulders must not interfere with plaintiffs' right to use the easement as granted. Accordingly, we also affirm the trial court's judgment in this regard.

Affirmed.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto