*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERIK SPORTELL and LISA SPORTELL,

        Plaintiffs/Counterdefendants-
        Appellants,

v

SHAWN ALSPACH, TIMOTHY R. ALSPACH, and
PATRICIA A. ALSPACH,

        Defendants/Counterplaintiffs-
        Appellees.

UNPUBLISHED
November 10, 2022

No. 359632
Muskegon Circuit Court
LC No. 20-004354-CZ

Before: SAWYER, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Plaintiffs, Erik and Lisa Sportell, appeal by right the trial court's opinion and order granting summary disposition in favor of plaintiffs in this litigation involving the scope of an express easement that burdens plaintiffs' property and benefits property owned by defendants, Shawn, Timothy, and Patricia Alspach. The court framed its opinion and order as granting summary disposition to plaintiffs; however, the opinion and order, which construed the easement, actually granted some declaratory relief to plaintiffs and some declaratory relief to defendants, the latter of which forms the basis of this appeal. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 29, 2020, plaintiffs filed a three-count complaint against defendants, alleging a claim for declaratory relief, a cause of action for trespass, and a request to quiet title in plaintiffs' favor. On December 11, 2020, defendants filed a counterclaim for declaratory relief. The complaint and the counterclaim focused on an express easement held by defendants. Plaintiffs' real property is subject to this easement. Although the complaint and counterclaim touched on multiple issues with respect to the scope of the easement, i.e., questions regarding what activities could and could not be engaged in when utilizing the easement, the only relevant issue for purposes

of this appeal is whether the easement granted defendants the right to indefinitely moor their boat to a dock installed by defendants.[1]

On May 3, 2021, the parties entered into a stipulated statement of undisputed facts, which provided as follows:

1. Plaintiffs own real property commonly referred to as 239 Sunset Trail, Muskegon 49442 (the "Sportell Property") pursuant to the Warranty Deed dated October 4, 2018 and attached hereto . . . .

2. The Sportell Property adjoins Wolf Lake on its western border.

3. Defendants Timothy R. Alspach and Patricia A. Alspach own real property commonly referred to as 239 Sunset Ridge Lane, Muskegon, Michigan 49442 (the "Alspach Property") pursuant to the Warranty Deed dated May 13, 2003 and attached hereto . . . .

4. The Alspach Property is subject to a recorded land contract with Defendant Shawn Alspach dated February 5, 2009 and attached hereto . . . .

5. The Sportell Property is subject to an express easement for the benefit of the Alspach Property (the "Easement"). The Easement language is found on . . . .

6. The Easement is located on the northern border of the Sportell Property.

7. The Sportell Property is also subject to an ingress/egress easement to the water's edge of Wolf Lake for the benefit of two other properties in the community who are non-parties to this litigation.

8. Sometime in June 2020, Defendant Shawn Alspach installed a dock from the edge of the Easement into Wolf Lake (the "Easement Dock").

9. Also in June 2020, Defendants moored a pontoon boat (the "Boat") to the Easement Dock. A picture depicting the Easement Dock and Boat is attached . . . .

10. Later that month, Plaintiff Erik Sportell had a conversation with Defendant Shawn Alspach regarding the Defendants' recorded interest in the Sportell Property including the Easement, Easement Dock and Boat.

11. On June 25, 2020, Defendants furnished a copy of Defendants' Warranty Deed evidencing the Easement to Plaintiffs.

---

[1] When the parties speak of "indefinite" or "permanent" mooring of the boat, they mean leaving the boat moored to the dock night and day, except when in actual use, during the entire boating season, not year round.

12.     On August 4, 2020, Defendant Shawn Alspach installed a personal watercraft and lift south of the Easement Dock in Wolf Lake.

13.     By August 23, 2020, Defendants had installed another personal watercraft and lift south of the easement dock in Wolf Lake (the two personal watercrafts and lifts are referred to collectively as the "Jet Skis"). Pictures of the Jet Skis are attached as . . . .

14.     During the summer of 2020, Defendants operated an All-Terrain Vehicle ("ATV") on the Easement.

15.     Between September and October of 2020, Plaintiffs and Defendants, through their respective counsel, corresponded with each other regarding the Parties' appropriate use of the Easement.

16.     The Parties are unable to agree on appropriate use of the easement.

Defendants' easement rights were conveyed to them in a 2003 warranty deed by grantor Wolf Lake Properties, LLC.  The easement encompasses "a 10.00 foot wide footpath . . . for ingress and egress . . . to the water's edge of Wolf Lake . . . ."  The easement further provides, in pertinent part, as follows:

> The Grantees shall have the following additional rights with regard to the described easement: (A) the right to install and maintain a dock into Wolf Lake; (B) the right to drive vehicles upon the easement and to park temporarily for the purpose of installing, repairing, or removing a dock; or to transport beach or boat supplies. Parked vehicles shall not interfere with the use of the easement by others holding an interest therein; and (C) the right to maintain a seasonal dock box.

On May 13, 2021, plaintiffs filed a motion for summary disposition under MCR 2.116(C)(10).  Plaintiffs argued that the easement language "is not ambiguous" and that extrinsic evidence could not be considered.  Plaintiffs contended that while the easement allows defendants to install and maintain a dock, the plain and unambiguous language of the easement does not permit a boat to be permanently moored to a dock.  And defendants' actions in doing so exceeded the scope of the easement and materially and improperly increased the burden on plaintiffs' estate.

Plaintiffs also maintained that the width of the easement is ten feet; however, the width of the dock added to the width of the boat exceed ten feet, thereby exceeding the scope of the easement.  Plaintiffs further noted that the fact that the dock and the boat together exceed ten feet establishes that the easement was never intended to allow defendants to permanently moor their boat to the dock.  Plaintiffs also presented arguments regarding other activities by defendants that allegedly exceeded the scope of the easement, but those matters are not at issue in this appeal.

In response, defendants argued that plaintiffs' position was "absurd" and that the right to maintain a dock includes the right to keep a boat at the dock.[2] Defendants asserted that to the extent that the easement is ambiguous, extrinsic evidence could be considered, and defendants offered the affidavit of Timothy Alspach. He averred, in relevant part:

2. On or about May 13, 2003, my wife and I obtained the easement described in the Warranty deed recorded at . . . .

3. At that time, my wife and I had owned our Wolf Lake property since 1988.

4. I had been keeping a fishing boat and dock on the beach since 1988.

5. The Easement was created to relocate my boat access easement from one area owned by Wolf Lake Properties, LLC to another area, so Wolf Lake Properties, LLC could develop the (then undeveloped) property.

6. To the best of my knowledge, Wolf Lake Properties, LLC, was operated by Nelson Stone, who developed the area around my property.

7. Nelson and I created the 2003 Easement to memorialize and keep my rights to keep a boat on a dock on Wolf Lake, as I had been doing on that property since 1988.

On November 3, 2021, a hearing was held on plaintiffs' motion for summary disposition. The parties reiterated their written arguments, and when the trial court attempted to narrow down the issues, it became clear that plaintiffs were mostly upset about defendants leaving their boat moored to the dock overnight during the boating season. The parties focused on the question whether under the easement defendants could moor their boat to the dock indefinitely or just temporarily. The court took the matter under advisement.

On November 18, 2021, the trial court issued a corrected opinion and order granting plaintiffs' motion for summary disposition relative to their claim for declaratory judgment.[3] The court ruled as follows:

The court finds that the language of the easement is unambiguous. The easement allows access to the water's edge (Wolf Lake). The easement allows the Alspachs to install and maintain a dock extending into Wolf Lake. A "dock" by definition is a structure "to which boats may be moored." *New Oxford American Dictionary* (2d ed). In addition, the easement allows the Alspachs to drive across it

---

[2] Defendants stated that when defense counsel had presented plaintiffs' counsel with the warranty deed containing the easement prior to the litigation, "[p]laintiffs coordinated with their neighbor to erect their docks on either side of [d]efendants' dock and effectively prevent [defendants] from using it[.]" A photograph appeared to substantiate defendants' contention.

[3] The original opinion and order was entered a couple of days earlier and contained a simple typo, which is why the court issued a corrected version.

-4-

and park temporarily to transport "boat supplies." Therefore, the easement allows the Alspachs to moor a boat at the dock. Although it also allows the Alspachs to transport "beach supplies," the court does not read this as a right for them to recreate on the easement.

> The easement allows the Alspachs to drive across it and park *temporarily* to install, repair, and maintain the dock. Such parking cannot interfere with others' use of the easement. The easement allows the Alspachs to keep a seasonal dock box. The easement does not allow access for other purposes, such as recreating on the easement, storage of the dock or anything else except the dock box seasonally, or the addition of lifts or any other structures or equipment or machinery.

We are a bit bewildered and frustrated with the trial court's ruling because although the main issue presented to the court was whether the boat could be moored to the dock indefinitely, the court did not expressly state whether mooring the boat could be indefinite; it simply ruled that the easement allows defendants "to moor a boat at the dock." We infer from the trial court's ruling that the court found that there were no time parameters relative to defendants' right to moor a boat to the dock, considering that the court placed no temporal restrictions on mooring a boat.

At the end of the trial court's opinion and order, it indicated that the order was "final and closes the case." The parties thought differently, and on December 7, 2021, the trial court entered a stipulated order of dismissal with respect to plaintiffs' trespass and quiet-title counts. This appeal ensued.

## II. ANALYSIS

## A. OVERVIEW OF APPELLATE ARGUMENTS

Plaintiffs first point out that they are riparian owners and that defendants are nonriparian owners. Plaintiffs state that nonriparian owners, like the public in general, have the right to use the surface water of a lake in a reasonable manner, including for such activities as boating, fishing, swimming, and temporarily anchoring boats, and that any additional rights must come from the express grants of an easement. Plaintiffs agree with the trial court that the easement is unambiguous. Plaintiffs contend that the scope of an easement is strictly confined to the four corners of the document. Plaintiffs argue that the unambiguous language of the easement at issue in this case, while granting defendants the right to install and maintain a dock on Wolf Lake, does not grant defendants the right to moor a boat indefinitely. Plaintiffs maintain that permanently mooring the boat to the dock is not necessary and incidental to the reasonable enjoyment of the dock. Plaintiffs assert that none of the language in the easement grants defendants the right to indefinitely anchor their boat at the dock. Rather, according to plaintiffs, as nonriparian owners, defendants only have a right to temporarily moor or anchor their boat. Plaintiffs argue:

> Reading the Easement as a whole in light of its purpose—for access to Wolf Lake—the grantor intended to give [defendants] the right to bring a boat to the dock, drive across the easement with boating supplies, park temporarily, load the boat, and enjoy access to Wolf Lake. It may be more convenient to leave the boat moored to the dock all summer, but the express language of the Easement does not

-5-

give [defendants] the right to moor the boat indefinitely. . . . Mooring a boat indefinitely . . . is not 'necessary' or 'incident' to the reasonable enjoyment of the dock.

Plaintiffs additionally contend that even if the easement is deemed ambiguous, extrinsic evidence demonstrates that defendants cannot indefinitely moor their boat to the dock. In support, plaintiffs note that their property is subject to another easement for ingress and egress to the water's edge of Wolf Lake, benefiting two other properties. This "second" easement covers the same area as the easement at issue and provides the easement holders with the right to "install and maintain a dock" on Wolf Lake, "provided only one dock is installed at any given time." Plaintiffs argue that it is impossible for all the easement holders, including defendants, to simultaneously moor their boats indefinitely without interfering with someone's easement rights and plaintiffs' riparian rights. Plaintiffs maintain:

> [T]he extrinsic evidence shows that if all easement holders were permitted to moor their boats to the dock indefinitely, such mooring would interfere with the riparian owners' access to the entire surface of Wolf Lake by overhanging the easement and blocking access to their own docks.

> Courts must construe instruments to avoid an absurd or unreasonable result. Because permitting [defendants] and Other Easement holders to moor their boats indefinitely on the dock would be an absurd result, this Court should not construe the Easement to permit such mooring.

> If this Court determines that the Easement is ambiguous, it should still enter an order based on the extrinsic evidence that the Easement does not permit [defendants] to moor their boat indefinitely and that their use of the dock is limited to the reasonableness standard of nonriparian owners to anchor boats temporarily.

Defendants respond that the easement is unambiguous and permits them to keep a boat at their dock. Defendants contend that when all of the provisions in the easement are viewed "as a whole, the only 'temporary' rights granted in conjunction with the easement are for vehicular access." Defendants further assert:

> Vehicles may access the land-based easement for installation, repairing, or removing a dock, or to transport beach or boat supplies. The dock box may be maintained "seasonally." The right to maintain and install a dock has no temporal restrictions. In fact, the plain language of the easement is silent on what [defendants] may do with the dock beyond transporting beach or boat supplies to the dock. Significantly, the Plaintiffs acknowledge that [defendants] are permitted to keep a boat at the dock, but argue that the unqualified, bare description equates to only *temporary* mooring of a boat.

Defendants emphasize the trial court's determination that a "dock" is defined in the dictionary as a structure to which boats may be moored.

In the alternative, defendants argue that if the language of the easement is subject to more than one reasonable interpretation, this Court can consider extrinsic evidence. Defendants claim that the easement might be deemed ambiguous, "as evidenced by the undefined scope of use and the parties' differing perspectives on whether or not [defendants] may continuously moor their boat at the dock." Defendants contend that Timothy Alspach's affidavit resolves all of the uncertainties in favor of allowing defendants to moor their boat at their dock during the entire boating season.

In a reply brief, plaintiffs argue that the dictionary definition of "dock" and Timothy Alspach's affidavit do not answer the question whether the easement implies a right to moor a boat *indefinitely*. Plaintiffs also reiterate that the easement is unambiguous, along with positing that defendants' effort to have this Court consider extrinsic evidence runs contrary to precedent by the Michigan Supreme Court.

## B. STANDARD OF REVIEW AND SUMMARY DISPOSITION PRINCIPLES

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). And we review de novo the interpretation and application of contracts, such as an easement agreement. *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 400; 964 NW2d 846 (2020); *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 654; 954 NW2d 231 (2020).

MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

"A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Pioneer State*, 301 Mich App at 377. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State*, 301 Mich App at 377. "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). "[S]peculation is insufficient to create an issue of fact." *MEEMIC Ins Co v*

-7-

*DTE Energy Co*, 292 Mich App 278, 282; 807 NW2d 407 (2011). A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999); see also MCR 2.116(G)(6).

## C. RELEVANT EASEMENT PRINCIPLES

An easement constitutes the right to use another's land for a specified purpose. *Bayberry Group*, 334 Mich App at 399. An easement can be created by covenant or agreement, by reservation or exception, or by express grant. *Id.* The use of an easement is strictly confined to the purpose for which it was reserved or granted. *Id.* The owner of property subject to an easement may rightfully use his or her land for any purpose that is not inconsistent with the rights of the easement holder. *Id.* "The language of the instrument that granted the easement determines the scope of the easement holder's rights." *Id.* at 399-400. When determining the purpose or scope of an easement, we apply the rules used to construe contracts. *Id.* at 400. Therefore, in ascertaining the scope of an easement, courts must discern the true intent of the parties at the time the easement was created. *Id.* A court should start its examination by reviewing the easement's plain language, and if the language of the easement is clear, it must be enforced as written absent any further inquiry. *Id.* "A dictionary may be consulted to ascertain the plain and ordinary meaning of words or phrases used in the contract." *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015).

It is an established principle of law that the conveyance of an easement gives the grantee all rights as are necessary or incident to the reasonable and proper enjoyment of the easement. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 41-42; 700 NW2d 364 (2005). The task of determining the intentions of the parties and construing any limiting language is strictly confined to examining the four corners of the easement. *Id.* at 42. When the text of an easement is ambiguous, a trial court may consider extrinsic evidence in order to assess and determine the scope of the easement. *Id.* at 48.[4]

In *Dyball v Lennox*, 260 Mich App 698, 705-706; 680 NW2d 522 (2004), this Court discussed riparian rights in the context of an easement, explaining:

---

[4] In *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003), the Michigan Supreme Court similarly stated:

> First, the trial court must determine whether the easement contemplates the construction and maintenance of a dock by defendants. In answering this question, the trial court shall begin by examining the text of the easement. Where the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted. If the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement. [Citation omitted.]

Erecting or maintaining a dock near the water's edge is a riparian or littoral right. A "riparian owner" is one whose land is bounded by a river and "riparian rights" are special rights to make use of water in a waterway adjoining the owner's property. There is no dispute that plaintiffs are riparian owners with riparian rights. And, there is no dispute that defendant's rights with regard to the lake are those rights granted in the easement. Reservation of a right of way for access does not give rise to riparian rights, but only a right of way. While full riparian rights and ownership may not be severed from riparian land and transferred to nonriparian backlot owners, Michigan law clearly allows the original owner of riparian property to grant an easement to backlot owners to enjoy certain rights that are traditionally regarded as exclusively riparian. [Quotation marks, citations, and brackets omitted.[5]]

## D. DISCUSSION AND RESOLUTION

Under the easement, defendants have the "right to install and maintain a dock into Wolf Lake." In pertinent part, a "dock" is defined as a "wooden pier used as a landing place or *moorage for boats*." *Merriam-Webster's Collegiate Dictionary* (11th ed) (emphasis added). Accordingly, we conclude that mooring a boat to a dock is necessary and incident to the reasonable and proper enjoyment of an easement that allows a grantee to install and maintain a dock. See *Blackhawk Dev Corp*, 473 Mich at 41-42. And this is especially true in this case where the easement specifically contemplates using the easement "to transport . . . *boat* supplies." (Emphasis added.)[6] Moreover, plaintiffs concede and acknowledge that the easement grants defendants the right to moor their boat to the dock. Additionally, even if the language of the easement on that particular question is characterized as ambiguous such that extrinsic evidence can be considered, Timothy Alspach's uncontroverted affidavit makes clear as a matter of law that the intent of the grantor of the easement, at least in part, was to provide defendants with the right to install and maintain a dock and moor a boat to the dock.

With respect to whether the boat can be moored to the dock *indefinitely*, which is the ultimate issue in this case, the parties' primary arguments are that the easement is unambiguous on the matter. Plaintiffs contend that there is no express language indicating that the dock can be used to indefinitely moor a boat, whereas defendants maintain that there is no express language restricting or limiting the usage. We agree with defendants.

The starting point is, once again, recognizing that under the easement defendants have a right to moor a boat to their dock. The easement does not contain any temporal limitation or restriction with respect to the use of the dock. And the silence, rather than creating an ambiguity

---

[5] "Strictly speaking, land which includes or abuts a river is defined as riparian, while land which includes or abuts a lake is defined as littoral[,]" but "the term 'riparian' is often used to describe both types of land[.]" *Thies v Howland*, 424 Mich 282, 288 n 2; 380 NW2d 463 (1986) (citation omitted).

[6] The easement also refers to "the right to maintain a seasonal dock box," and it is common knowledge that dock boxes are used, in part, for storing boating accessories.

or demonstrating no intent to allow permanent or indefinite use, plainly and unambiguously establishes that the intent was to allow indefinite use of the dock by defendants, which includes mooring a boat. Indeed, the easement employs express limiting language when indicating that the grantees may only park "temporarily" upon the easement, but no comparable language was used in describing the right to maintain a dock—with the incidental right to moor a boat to the dock.

The flaw in plaintiffs' position is revealed if one accepts the argument that the plain and unambiguous language of the easement does not permit indefinite use of the dock to moor defendants' boat. The question that would immediately arise would concern how to identify the parameters of limited or restricted use of the dock. Whatever parameters were offered, even a vague reasonableness standard, would effectively entail adding language to the easement that simply does not exist. "We cannot read words into the plain language of a contract." *Northline Excavating, Inc v Livingston Co*, 302 Mich App 621, 628; 839 NW2d 693 (2013). For example, if the right to moor a boat to the dock is not indefinite and a restriction were put in place forcing defendants to remove the boat at night, such restriction on the use of the dock would find no basis in the language of the easement or in the law of easements. Plaintiffs would retort that we are reading the term "indefinite" or "permanent" into the easement, but that is already reasonably implied given the absence of any limiting language. On the other hand, "temporary" use cannot be implied from the easement's plain language.

Furthermore, assuming an ambiguity, we note that defendants submitted extrinsic evidence in the form of Timothy Alspach's affidavit, which provided that the intent of the easement was to allow defendants to continue "keep[ing] a boat on a dock on Wolf Lake," thereby indicating indefinite use. We also note in regard to plaintiffs' evidence of the easement benefiting two other properties that the existence of that easement does not mean that defendants' easement rights to moor a boat to the dock cannot be deemed indefinite or permanent *in the context of this case*. Were there an actual dispute between defendants and the other easement holders, perhaps defendants' dock and mooring rights could be restricted, but this is not the issue or situation before us.

In sum, we hold that the plain and unambiguous language of the easement allows defendants to moor a boat to the dock and to do so indefinitely during the boating season. Consideration of extrinsic evidence would lead to the same result. Accordingly, the trial court did not err in its ruling.

We affirm. Having fully prevailed on appeal, defendants may tax costs under MCR 7.219.


/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Brock A. Swartzle

-10-